UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KENNETH A. JORDAN | : | |
| | : | |
| v. | : | C.A. No. 07-175A |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on May 17, 2007 seeking to reverse the decision of the Commissioner. On October 28, 2007, Plaintiff filed a Motion to Remand the Decision of the Commissioner. (Document No. 8). On December 12, 2007, the Commissioner filed a Motion for Order Affirming the Decision of the Commissioner. (Document No. 10).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion to Remand the Decision of the Commissioner (Document No. 8) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on May 5, 2003, alleging disability as of April 1, 2003, with protective filing from April 30, 2003. (Tr. 61-65). The application was denied initially (Tr. 25, 27-29) and on reconsideration. (Tr. 26, 33-35). Plaintiff filed a request for an administrative hearing. (Tr. 36-39). On May 19, 2005, a hearing was held before Administrative Law Judge V. Paul McGinn (the "ALJ") at which Plaintiff, represented by counsel, a vocational expert and a medical expert appeared and testified. (Tr. 326-350).

On September 19, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 13-22). Plaintiff appealed to the Appeals Council by filing a request for review. (Tr. 325). The Appeals Council denied Plaintiff's request for review on March 16, 2007. (Tr. 7-10). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ ignored and/or failed to adequately consider evidence favorable to Plaintiff, and thus his findings are not supported by substantial evidence.

The Commissioner disputes Plaintiff's claims, and asserts that Plaintiff failed to prove that he was disabled because he did not have any impairments, other than substance abuse, that were severe.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be

met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as

consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352

(11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was forty-three years old at the time of the ALJ hearing, with a seventh-grade education, and a GED, who has previous work experience in plumbing and heating, and as a shell fisherman. (Tr. 75, 80, 86). Plaintiff alleged disability due to chronic alcoholism, high blood pressure and nerve problems. (Tr. 74). Plaintiff additionally alleged heel aches, foot pain, leg weakness and pain, loss of appetite, headaches and side effects from his medications. (Tr. 98-99).

In May 2003, Plaintiff indicated that his ability to work was limited as a result of alcoholism, high blood pressure and nerves. (Tr. 74). He reported that he was receiving treatment, i.e., receiving medication for alcoholism and high blood pressure from Dr. Arcand and for alcoholism from Dr. Golomb. (Tr. 76). Plaintiff reported that he had last worked in June 2002 and that this work was in plumbing.[1] (Tr. 74, 75).

Plaintiff has a long history of alcoholism and drug usage. In October 2001, Plaintiff was evaluated for "recent mood disorder symptoms." (Tr. 147-149). He reported having been drinking since the age of nine and had been drinking as much as three-quarters of a liter of liquor per day until about two weeks earlier. (Tr. 147). It was noted that his mood disorder symptoms were improving since he had stopped drinking, and Dr. Webb did not feel that antidepressants needed to

---

[1] An earnings record obtained in 2004 did not show any earnings covered by Social Security after 1998. (Tr. 68-71). Plaintiff testified that from 1999 until 2003 he did some work in plumbing and heating but that it was "under the table." (Tr. 330). In June 2005, Plaintiff told Dr. Turchetta that he had worked for two months "last summer" and quit because it was too stressful. (Tr. 318). At his hearing in May 2005, Plaintiff testified that he had last worked in August 2004 and that this was as a mechanic earning $25.00 an hour and the ALJ indicated that an updated earnings record showed earnings of $3,800.00 in 2004. (Tr. 329-330).

be prescribed. (Tr. 148). Dr. Webb noted that all mood disorder symptoms were improving since Plaintiff had stopped drinking and diagnosed chronic, severe alcohol dependence in very early remission and opined that a mood disorder or alcohol-related mood disorder should be ruled out. Id. Dr. Webb opined that Plaintiff's global assessment of functioning ("GAF") was 40 to 50 "by virtue of alcohol intake." (Tr. 149).

In November 2001, it was reported that Plaintiff had been sober for thirty days before recently going on a binge. (Tr. 265). Plaintiff was discharged from treatment to attend a men's relapse prevention group in May 2002 with his alcohol dependence in a reported six-month remission. (Tr. 125). His GAF at that time was reported as being 65 to 70. Id. In August 2002, it was reported that Plaintiff had been sober for seven or eight months before recently relapsing. (Tr. 264). In July 2003, Plaintiff admitted that he was still drinking but reported that he was "cutting down." (Tr. 282).

In July 2003, Dr. Gordon reviewed Plaintiff's medical records and prepared a psychiatric review technique form ("PRTF") and an assessment of Plaintiff's mental functional capacity. (Tr. 179-183, 184-197). Dr. Gordon concluded that Plaintiff suffered from alcohol dependence and a substance induced mood disorder. (Tr. 178, 181). Dr. Gordon found that Plaintiff's alcohol dependence was ongoing, and his residual functional assessment included the limitations related to that condition. (Tr. 181). Dr. Gordon concluded that Plaintiff's alcohol dependence resulted in mild restrictions of daily activities; moderate difficulty maintaining social functioning; and moderate difficulty maintaining concentration, persistence and pace and had resulted in one or two episodes of decompensation. (Tr. 194).

In January 2004, Dr. Killenberg reviewed Plaintiff's medical records and prepared an assessment of Plaintiff's mental functional capacity and a PRTF. (Tr. 208-212, 213-226). Dr.

Killenberg concluded that when alcohol dependence was considered, Plaintiff had a marked limitation in maintaining attention and concentration for extended periods; in performing tasks within a schedule; and, in maintaining socially appropriate behavior but that when it was not, he had only a moderate limitation in maintaining attention and concentration for extended periods and only a mild limitation in performing tasks within a schedule and in maintaining socially appropriate behavior. (Tr. 208-209). Dr. Killenberg concluded that Plaintiff's psychological impairments resulted in mild restrictions of daily activities and mild difficulty maintaining social functioning; and that he had marked difficulty maintaining concentration, persistence and pace when his alcohol dependence was considered but only mild difficulty in that area when it was not. (Tr. 223).

In February 2004, Plaintiff reported that he had been "off the alcohol for one month" and that he had anxiety and depression; but, Dr. Golomb opined that "all in all" he was "doing well." (Tr. 285). In April 2004, it was reported that Plaintiff continued to drink. (Tr. 287). In November 2004, it was reported that Plaintiff was doing well and had not been drinking for two months. (Tr. 291).

In January 2005, Plaintiff told Brian Hickey of West Bay Psychiatric Associates that he had a twenty-year history of "heavy drug and alcohol abuse" but that he had been sober for three months. (Tr. 304). Plaintiff was anxious and reported sleep problems, but there were reportedly no abnormalities in his thought process or content. (Tr. 306). Alcohol dependence was diagnosed, and Plaintiff's GAF was rated at 60 and as high as 66 during the past year. (Tr. 307).

In February 2005, Dr. Cribb evaluated Plaintiff for hepatitis. (Tr. 298-299). Plaintiff denied any abdominal pain, diarrhea, constipation, melena or heratochezia. (Tr. 298). He reported that he had not had alcohol in four months but that he smoked cocaine intermittently, including the night

before his examination and smoked marijuana daily. Id. Dr. Cribb opined that Plaintiff's positive Hepatitis C antibody likely represented chronic Hepatitis C. (Tr. 299). He discussed treatment with Plaintiff but did not believe that he was currently a candidate for treatment, given his recent history of alcohol abuse and current drug use. Id.

At Plaintiff's hearing in May 2005, Dr. Gitlow, the medical expert, testified that Plaintiff's only diagnosis was polysubstance abuse. (Tr. 342). Dr. Gitlow specializes in addiction psychiatry. (Tr. 55). He testified that medical records indicated that Plaintiff had been alcohol free for short periods but did not state that he was not using marijuana or other drugs on a daily basis. (Tr. 343). He testified that there could be a dual diagnosis of depression as well as substance abuse and that in order to rule out another psychiatric disorder, a period of sobriety from alcohol and drugs was needed and that the record did not reflect such a period that had lasted for more than one month with respect to drug usage. (Tr. 343-344).

In June 2005, Louis Turchetta, a Licensed Psychologist, conducted an evaluation of Plaintiff's levels of social, emotional and intellectual functioning. (Tr. 317-323). During his evaluation, Plaintiff's hands trembled, and he exhibited difficulty maintaining attention and concentration. (Tr. 317). Plaintiff reported that he had difficulty sleeping and that he had lost sixty pounds over the last year, (Tr. 318), but Dr. Turchetta described him as being "average in height and weight." (Tr. 319). Plaintiff's medical records indicate that he weighed 195 pounds in February 2005 (Tr. 298) which is close to what he weighed in August 2002. (Tr. 266). Dr. Turchetta noted that Plaintiff was able to maintain eye contact and that rapport was easily established during the examination. (Tr. 319). IQ test results indicated that Plaintiff functioned in the borderline range of cognition; but Dr. Turchetta felt that these results underestimated his true capability because Plaintiff

exhibited difficulty maintaining attention and adequately engaging in the testing process. (Tr. 318, 320). Plaintiff reported a significant past history of alcoholism and occasional cocaine use; but, that he had been sober for six months and had not used cocaine in six months. (Tr. 318). Dr. Turchetta diagnosed alcohol dependence in "early partial" remission; a cognitive disorder; and cocaine abuse. (Tr. 320). On the basis of these combined impairments, Dr. Turchetta opined that Plaintiff's GAF was 45. Id.

**A. The ALJ Properly Evaluated the Materiality of Plaintiff's Substance Dependence.**

Under the Act, a finding of disability is precluded "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that [an] individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). The Commissioner's regulations provide that "a finding of disability is a condition precedent to the application" of this section of the Act. Brown v. Apfel, 71 F. Supp. 2d 28, 35 (D.R.I. 1999). The issue is whether the claimant would remain disabled if he stopped using alcohol and/or drugs. Specifically, the ALJ must determine which, if any, of the claimant's current limitations would remain if he stopped using alcohol and/or drugs. 20 C.F.R. § 416.935(b). If any remaining limitations would not be disabling, the claimant's alcoholism or drug addiction is a contributing factor material to the finding of disability. Id. If they would be, the claimant is disabled independent of his alcoholism or drug addiction and is benefits eligible. Id.

In this case, the ALJ found that Plaintiff's "ongoing substance abuse prevents him from being able to sustain employment on a full time basis" and that Plaintiff's depression and anxiety symptoms are "solely attributable to his ongoing substance abuse." (Tr. 20). Thus, he concluded

that Plaintiff's substance dependence is a contributing factor material to a finding of disability. (Tr. 22). In reaching this conclusion, the ALJ relied heavily on the opinion of the medical expert, Dr. Gitlow. Id.

Plaintiff argues that the ALJ relied too heavily on the expert opinion of Dr. Gitlow and did not adequately consider other evidence favorable to him. Thus, he asserts that there is no competent medical evidence in the record to support the ALJ's finding that no severe mental impairment would exist absent Plaintiff's substance abuse. Because of Plaintiff's ongoing history of substance dependence, the materiality assessment under 20 C.F.R. § 416.935(b) in this case is analogous to crystal-ball gazing. See Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003) (describing it as a "necessarily...hypothetical" determination). Such hypothetical determinations often turn on who bears the burden of proof. Here, it is Plaintiff who bears the burden of proving that substance addiction is not a contributing factor material to his disability. See Gerathy v. Barnhart, 2005 WL 1231501, at *3 n.6. (D. Me. May 24, 2005) (citing Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999)).

Dr. Gitlow is Board certified in psychiatry and neurology and has a primary specialty of addiction psychiatry. (Tr. 55). Plaintiff does not contest Dr. Gitlow's expertise. Dr. Gitlow reviewed Plaintiff's entire medical record in this case. (Tr. 53).[2] Based upon his review and expertise, Dr. Gitlow testified that Plaintiff's only diagnosis was "polysubstance dependence." (Tr.

[2] Dr. Gitlow did not have the benefit of Dr. Turchetta's June 2005 evaluation. (Tr. 317-323). However, Dr. Turchetta's report is not supportive of Plaintiff's materiality position, as he does not diagnose any depression but rather diagnoses alcohol dependence in "early partial remission" and "cocaine abuse." (Tr. 320). While Dr. Turchetta also diagnoses a cognitive disorder, there is absolutely no indication of such a disorder in any of the other medical records and no indication that Plaintiff would continue to experience cognitive problems if his alcoholism and drug abuse were in full remission.

342). During cross-examination, Plaintiff's counsel asked Dr. Gitlow if it was possible that there is a "dual diagnosis, depression as well as substance abuse." (Tr. 343). A dual diagnosis exists if a claimant suffers from a mental impairment independent of his substance abuse. In response, Dr. Gitlow candidly testified that "it's possible" but that "you need a period of sobriety" in order to "rule in another primary psychiatric disorder." Id. In other words, Dr. Gitlow chose not to gaze into the crystal ball, and he essentially found no factual basis upon which to predict Plaintiff's condition had he actually sustained a period of sobriety.

Dr. Gitlow found no basis in the record to support Plaintiff's claim of sobriety, and the ALJ did not find Plaintiff to be fully credible on that point. (Tr. 20, 342-344). Both noted the existence of a 2005 medical record noting Plaintiff's "recent history of alcohol abuse and his current drug usage." (Tr. 299). This February 2005 record of Dr. Cribb also noted that Plaintiff reported smoking cocaine "last night" and "intermittently" as well as "daily" marijuana use. (Tr. 298). Plaintiff's counselor, Brian Hickey, saw him regularly from January to April 2005 (Tr. 307-313) and, on May 2, 2005, reported that Plaintiff had "been sober – no drug and/or etoh use in approximately 8 months." (Tr. 316). Mr. Hickey reported on January 27, 2005 that Plaintiff's "ETOH/poly drug" abuse (polydrug abuse is abuse of more than one substance including alcohol) had been in remission for three months. (Tr. 313). Again, this directly contradicts Dr. Cribb's February 2005 notation of "current" cocaine and marijuana use. Further, Plaintiff was initially evaluated by a clinical social worker, Richard Paris, LICSW, on January 28, 2005 and, under the heading "ETOH/DRUG," the evaluation notes Plaintiff's use of the Antabuse drug for his alcoholism and that he had been sober for three months but fails to report his "current" drug use. (Tr. 300). A reasonable interpretation of the record is that Plaintiff was not fully forthcoming about

his continued drug use with mental health treatment providers but was candid when seeking an accurate evaluation of his Hepatitis C from a medical doctor.[3] Since the burden of proof is on Plaintiff as to the materiality assessment, it was not error for the ALJ to rely on Dr. Gitlow's opinion even though he could not absolutely rule out a dual diagnosis.

It was also not error for the ALJ to place more reliance on Dr. Gitlow's review and expertise than the other medical evidence of record. Plaintiff's medical records indicate that his primary psychological impairments are alcoholism and drug abuse, although, there are references to depression. The records, however, indicate that when Plaintiff's alcoholism is under reasonable control and in remission, any coexisting depression or anxiety is not of a severely limiting degree. For instance, Plaintiff's diagnosis, when he started a treatment program at the Providence Center in October 2001, was alcohol dependence and an adjustment disorder with depression; but, when he completed the program, the only diagnosis was alcohol dependence in six months' remission. (Tr. 125). Around the time Plaintiff started this program, Dr. Webb opined that Plaintiff's GAF was 40 to 50 "by virtue of alcohol intake." (Tr. 149). Plaintiff's GAF at the time he completed the program in May 2002 was reported as being 65 to 70. (Tr. 125). A GAF rating of between 41 and 50 represents a person with some serious symptoms or serious impairment in social, occupational, or school functioning; however, a rating of between 61 and 70 reflects a person who has some mild symptoms such as mild depression or mild insomnia or some difficulty in social, occupational or school functioning but who is generally functioning pretty well and having some meaningful interpersonal relationships. American Psychiatric Association, Diagnostic and Statistical Manual

---

[3] Dr. Cribb advised Plaintiff that he was not a candidate for treatment because of his "recent history of alcohol abuse and his current drug usage." (Tr. 299). He reported that Plaintiff stated he would "stop all drug usage and remain off alcohol" and return for reevaluation in six to eight weeks. Id. There is no record of any follow-up appointment with Dr. Cribb which suggests that Plaintiff was unable to stop his drug use, and any reevaluation would be a moot point.

of Mental Disorders 32 (4th ed. 1994). The higher the rating within a given range, the less severe the impairment. This supports a finding that Plaintiff did not have any other severe psychological impairment when he was abstaining from alcohol consumption or drug use.

From the ALJ's detailed decision, it is apparent that he fully evaluated all of the medical evidence of record. The ALJ articulated sound reasons for his conclusion. Plaintiff takes issue with the ALJ's conclusion that Dr. Gitlow's expert opinion had more value than the other pieces of medical evidence and essentially asks this Court to second-guess the ALJ and substitute its own judgment for his. That is not the Court's function. Since the record contains substantial evidence supporting the ALJ's findings, they are entitled to deference and must be affirmed. Plaintiff has shown no legal error in the ALJ's analysis.

## VI. CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion to Remand the Decision of the Commissioner (Document No. 8) be DENIED. Final judgment shall enter in favor of the Commissioner.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 10, 2008